ABRAHAM SHAVER, JOHN STINSON, and al. v. PHILIP SHAVER.

The vested right of a legatee, upon his death, is transmitted to his personal representatives.

The next of kin are not the personal representatives, and cannot, as such, come into court representing the ancestor.

Where a legatee died before receiving his legacy, without a will, and there had been no administration; a bill filed by his next of kin, to recover the amount due on the legacy, held bad on demurrer: such a claim could be properly made only through the medium of an administrator.

The next of kin may come into this court seeking their rights against administrators, calling them to account, or seeking a distributive share of the intestate's estate. They have a direct interest, which they may lawfully assert.

After payment of debts, the administrator is a trustee for the benefit of the next of kin, alone; and they may proceed against him directly for what is due them.

The power of the administrator is over all the estate, not only for the purpose of paying debts, but for the purpose of distribution; and if he come into court, on good ground of equity, seeking to recover assets, the court will aid him; without enquiring whether they are to be appropriated to pay debts, or to be distributed among the next of kin.

FREDERICK Shaver, late of the county of Sussex, made his last will and testament on the 2d October, 1819, in due form of law to pass real estate. He gave the farm on which he then lived to his son Philip Shaver, the defendant, in these words: "I give to my [son] Philip Shaver the farm I now live on, and to his heirs and assigns for ever, and to have possession after my wife's decease or marriage: and it is my will and order that my son Philip Shaver, six years after my wife's decease or marriage, pay the sum of what the one-fifth part of my farm I now live on would then be worth, which sum of money to be equally divided between my son William Shaver and my son Abraham Shaver." The testator died on the 20th of May, 1823, and his wife died on the 11th of March, in the same year. Philip Shaver accepted of the devise, and entered into possession, and still holds the same under the said will. At the death of the testator William Shaver and Abraham Shaver were living: within six years after the death of the wife, to wit, on the 6th January,

Oct. 1831.

Shaver et al.
v.
Shaver.

1829, William Shaver died intestate, and without wife or issue.

Philip paid to Abraham, after the expiration of the six years from the death of their mother, three hundred and thirty-six dollars, being his proportion of the money to be paid by Philip, as directed by the will.

The bill alleges that William Shaver had, at the time of his death, other estate more than sufficient to pay his debts, out of which the debts have long since been paid; and it is brought by the complainants, as next of kindred, to recover the amount due to them, on the ground that it is not only a charge upon the land so devised as aforesaid, but that the said Philip is also personally liable to pay to them the said sum of three hundred and thirty-six dollars, except that part to which he is himself entitled as one of the next of kin.

To this bill there is a general demurrer.

The case was argued by

*Scudder*, for the complainants;

*I. H. Williamson*, for the defendant.

Cases cited :—1 *Atk. R.* 502; *Prec. in Ch.* 290; 2 *Vern. R.* 617, 424; 2 *Ventris R.* 366; 1 *Vern. R.* 204, 321; *Amb. R.* 169; 2 *Pen. R.* 758–9; 1 *Bro. C. C.* 119.

THE CHANCELLOR.   The complainants come into court as next of kin, claiming the amount said to be due them from the defendant.   And the first inquiry is, whether they are entitled, as such next of kin, to come in and make their demand; even admitting that William had a vested right to the money.   William died without a will, and there has been no administration, consequently there are no personal representatives.

When the point was first raised, it appeared to me that there must be administration, and that the claim could be properly made only through the medium of an administrator.   Respect for the opinion of the learned counsel who drew the bill, induced me to pause and examine; and having done so, I am now satisfied

that the bill cannot be sustained in its present shape. If there was a vested right to the money in William at the time of his death, it was of course transmissible; and all the authorities, as well as the reason of the thing, show that such rights are transmitted to the personal representatives. Next of kin are not personal representatives, and cannot come as such into court representing the ancestor. If they were permitted to do so, it is conceived that much inconvenience would result from it; more, probably, than can well be foreseen. I have examined the books with some care, and have not been able to find a single case or principle to support the present proceeding. There are many instances, it is true, in which the next of kin, as such, come into this court pursuing their rights against administrators, calling them to account, or seeking a distributive share of the estate of the intestate; but their right to do so rests upon very plain principles. The administrator, in such cases, is accountable to them, and them only. They have a direct interest, which they may lawfully assert. After the payment of debts, the administrator is a trustee for their benefit alone, and they may proceed against him directly for what is actually due them. But in this case the complainants seek to get in their hands the moneys of the estate or of the intestate, not from the administrator, but from some third person in whose hands the property happens to be; and to get it, not for the purpose of paying debts, or applying it in a course of administration, but of appropriating it directly to their own use.

The difficulty appears to have been foreseen by the counsel of the complainant; and to avoid it, he has stated in the bill that all the debts of the intestate are fully paid. And the demurrer may be taken as admitting that fact as between these parties. Still I cannot consider the proceeding a safe one. If allowed in this case, it must be in all other cases where a similar allegation is made, or where the next of kin choose to come before the court and say that there are no debts, and therefore no necessity for administration. Suppose in such a case, the demurrer overruled. The court certainly cannot take it for granted that there are no debts, or that they have been paid. The rights of creditors, if there should be any, being involved, and the creditors

not being before the court either personally or by representative, satisfactory if not strict proof would be required. How then is it to be proved that there are no debts, or that they have all been paid? By whom, and under what authority, will the payments have been made? What will be proper evidence to show that the proceeding is right, there being neither law nor authority to sustain it? It is easy to see that much confusion would result from such a state of things.

The counsel seemed to suppose that in this case, if there were an administrator, and the debts were all paid, he could have no equity to sustain him, and that an administrator can come into this court for a recovery of assets, only on the ground that they are necessary for the payment of debts. I apprehend this is a mistake. The power of the administrator is over all the assets of the estate, not only for the purpose of paying debts, but for the purpose of distribution. And if he come here upon good grounds of equity, seeking aid to recover assets, this court will never inquire whether they are to be appropriated to pay debts, or to be distributed among the next of kin.

My opinion is, that the demurrer is well taken. I regret the necessity that impels me to this conclusion, whereby the complainants are necessarily turned round to seek a remedy in another shape. The main question involved in the controversy is one of considerable importance and some difficulty. It is, whether the money directed to be paid to William six years after Philip took possession of the estate, (the same being a charge on the land,) was a vested interest, and transmissible to his representative; or whether, in consequence of his death before the expiration of the six years, it sinks into the land for the benefit of the devisee. The authorities on both sides are very numerous. I have examined them with attention, but deem it inexpedient, on many accounts, to express any opinion at this time.

Demurrer allowed.